IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Case No. 18-cr-00631-PX-1** |
| **v.** | * | |
| | * | |
| **SCOTT ANTHONY WILLIAMS** | * | |
| | * | |
| | * | |
| **Defendant** | * | |
| ************ | | |

**MEMORANDUM OPINION AND ORDER OF COURT**

This matter is before the Court on the defendant's Motion to Reopen Detention Hearing and Set Conditions of Release or to Issue Order for Temporary Release (the "Motion") (ECF No. 62), the government's Opposition to Defendant's Motion for Release (the "Opposition") (ECF No. 63), and the defendant's Reply to Government's Opposition to Mr. Williams's Motion to Reopen Detention Hearing and Set Conditions of Release or to Issue Order for Temporary Release (the "Reply") (ECF. No. 66). The issues have been fully briefed, and no hearing is necessary. L.R. 105.6, 207. For the reasons stated below, the Motion is **DENIED**.

I.  PROCEDURAL HISTORY

On December 19, 2018, a federal grand jury returned an indictment charging the defendant with Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Methamphetamine, Cocaine, and Marijuana, in violation of 21 U.S.C. § 846; Possession with Intent to Distribute 500 Grams or More of Methamphetamine, Cocaine, and Marijuana, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(A)(viii); and Possession of Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). The defendant

appeared for his initial appearance on January 24, 2019. On February 4, 2019, the defendant appeared before this Court for a detention hearing.[1]

## II. BAIL REFORM ACT

Pretrial detention and release are governed by the Bail Reform Act ("BRA"). 18 U.S.C. §§ 3141 *et seq.* The government is permitted to seek pretrial detention of the defendant in this case because the defendant is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801 *et seq.*) and with an offense involving the possession of a firearm. *Id.* § 3142(f)(1)(C) & (E). In fact, a rebuttable presumption of detention applies in this case because the defendant is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act and an offense under 18 U.S.C. § 924(c). *Id.* § 3142(e)(3)(A) & (B). Where the presumption can be rebutted, the BRA requires the Court to order the pretrial release of the person "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B). If, however, the Court finds after a detention hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court "shall order the detention of the

---

[1] The operative charging document at the present time is the superseding indictment returned by the grand jury on December 18, 2019, charging the defendant with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846; Possession with Intent to Distribute Controlled Substances, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(A)(viii); Possession of Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and Murder in Furtherance of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 848(e)(1)(A).

appeared for his initial appearance on January 24, 2019. On February 4, 2019, the defendant appeared before this Court for a detention hearing.[1]

## II. BAIL REFORM ACT

Pretrial detention and release are governed by the Bail Reform Act ("BRA"). 18 U.S.C. §§ 3141 *et seq.* The government is permitted to seek pretrial detention of the defendant in this case because the defendant is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801 *et seq.*) and with an offense involving the possession of a firearm. *Id.* § 3142(f)(1)(C) & (E). In fact, a rebuttable presumption of detention applies in this case because the defendant is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act and an offense under 18 U.S.C. § 924(c). *Id.* § 3142(e)(3)(A) & (B). Where the presumption can be rebutted, the BRA requires the Court to order the pretrial release of the person "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B). If, however, the Court finds after a detention hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court "shall order the detention of the

---

[1] The operative charging document at the present time is the superseding indictment returned by the grand jury on December 18, 2019, charging the defendant with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846; Possession with Intent to Distribute Controlled Substances, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(A)(viii); Possession of Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and Murder in Furtherance of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 848(e)(1)(A).

person before trial." *Id.* § 3142(e)(1). "The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." *Id.* § 3142(f). On the other hand, where risk of flight is the basis of a detention order, the government must prove by a preponderance of the evidence that no combination of conditions of release will reasonably assure the defendant's presence at future court proceedings. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

> The Court's determination is governed by four factors:
>
> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1951, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including –
>
> (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### III.  REOPENING THE DETENTION HEARING

After hearing from the parties at the detention hearing, the Court reviewed the factors set forth in 18 U.S.C. § 3142(g) and found that the defendant had not introduced sufficient evidence to rebut the presumption of detention. Therefore, the Court ordered that the defendant be

detained.  *See* Order of Detention Pending Trial (ECF No. 14).  The defendant is presently housed at the Chesapeake Detention Facility ("CDF") in Baltimore.  The defendant now moves to reopen the detention hearing.  Indeed, under 18 U.S.C. § 3142(f), a detention hearing

> may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

The defendant argues that the detention hearing should be reopened because information exists that was not known to him at the time of the detention hearing, and that this information has a material bearing on the issue of whether there are conditions of release that will reasonably assure his appearance as required and the safety of any other person and the community.  The defendant asserts that "the current pandemic health crisis combined with [his] preexisting health conditions place him [at] risk of serious illness should he remain detained."  Motion (ECF. 62 at 1).  Specifically, the defendant claims that he suffers from chronic diabetes, hyperlipidemia (high cholesterol), essential hypertension, and chronic kidney disease, which "place [him] at a significantly heightened risk for developing complications associated with COVID-19."  Reply (ECF No. 66 at 3).[2]  He then argues that, considering the new information, conditions of release can be fashioned to assure his appearance as required and the safety of any other person and the community.

COVID-19 is a worldwide pandemic that has had a profound impact on the health and daily life of millions of people.  According to the Centers for Disease Control and Prevention

---

[2] The defendant only noted diabetes and hypertension as preexisting health conditions in the Motion (ECF NO. 62 at 8) and only high blood pressure at the time of his initial appearance. Hyperlipidemia and chronic kidney disease were added as preexisting health conditions in the Reply (ECF No. 66 at 3).

(the "CDC"), as of May 27, 2020, there were 1,678,843 COVID-19-positive cases in the United States and 99,031 deaths related to the virus.[3] COVID-19 poses special risks for the elderly and those with certain preexisting medical conditions. Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19. *See Coreas v. Bounds*, __ F. Supp. 3d __, Civil Action No. TDC-20-0780, 2020 WL 1663133, at *1-2 (D. Md. Apr. 3, 2020).

At the outset, the Court finds that the unprecedented magnitude of the COVID-19 pandemic and the heightened risk of exposure to residents of detention facilities constitute information not known to the defendant at the time of the detention hearing that has a material bearing on whether conditions of release can be fashioned to assure the appearance of the defendant as required and the safety of the community. *See, e.g.*, *United States v. Bilbrough*, Criminal Case No. TDC-20-0033, Order at 4 (D. Md. Mar. 20, 2020), *aff'd*, __ F. Supp. 3d __, 2020 WL 1694362 (D. Md. Apr. 7, 2020); *United States v. Martin*, __ F. Supp. 3d __, Criminal Case No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020). This is particularly true given that the defendant suffers from one or more health conditions that put him at a higher risk for severe illness from COVID-19.[4] Therefore, the Court finds that the defendant has established a satisfactory basis to reopen the detention hearing.

---

[3] *CDC COVID Data Tracker*, Ctrs. for Disease Control & Prevention (May 27, 2020), https://www.cdc.gov/covid-data-tracker/.

[4] According to the CDC, diabetes and hypertension are health conditions that may put people at higher risk of severe illness from COVID-19. Chronic kidney disease being treated with dialysis may also increase a person's risk for severe illness from COVID-19. However, it does not appear from the medical records submitted by the defendant that his chronic kidney disease is treated with dialysis. It does not appear the hyperlipidemia is a health condition that may increase a person's risk of severe illness from COVID-19. *See People Who Are at Higher Risk for Severe Illness | Coronavirus | COVID-19 | CDC*, Ctrs. for Disease Control & Prevention (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Considering that the defendant's basis for reopening the detention hearing concerns new information regarding the impact that COVID-19 may have on his health, the Court finds the following comments by United States District Judge Stephanie A. Gallagher in a recent case particularly instructive:

> Congress carefully prescribed the factors that a court should consider in weighing whether a particular defendant should be detained or released before trial. *See generally* 18 U.S.C. § 3142(g). None of those factors refers specifically to the health of the defendant, or to whether the conditions of incarceration threaten the defendant's well-being. Instead, Congress focused the required inquiry on the defendant's risk of nonappearance, and the danger that the defendant's release would pose to other individuals. In some circumstances, clearly, a particular defendant's medical condition could reduce that defendant's risk of flight or danger to the community, and the health condition would therefore fall within the factors appropriately considered in the context of § 3142(g). Absent those circumstances, however, a particular defendant's health conditions, and the possible risks posed to the defendant by incarceration, do not affect the § 3142(f) and (g) analysis. *See, e.g.*, *United States v. Clark*, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community. The risk of harm *to the defendant* does not usually bear on this analysis."); *United States v. Lawton*, Crim. No. CR419-102, 2020 WL 1984897, at *1 (S.D. Ga. April 27, 2020) (same); *United States v. Whyte*, Crim. No. 3:19-cr-64-1 (VLB), 2020 WL 1911187, at *4 (D. Conn. April 8, 2020) (analyzing medical conditions under § 3142(i)); *United States v. Aguirre-Maldonado*, Crim. No. 20-cr-53 (NEB/TNL), 2020 WL 1809180, at *1 (D. Minn. April 9, 2020) ("While the Court appreciates the unprecedented nature of the COVID-19 pandemic, Defendant has offered no reason why the pandemic would reduce his risk of nonappearance or the risk that he poses to the community."); *United States v. Lee*, No. 19-cr-298 (KBJ), 2020 WL 1541049 (D.D.C. March 30, 2020) ("[T]he relevant statutory inquiry [under § 3142(g)] is *not* the benefits that a defendant's release would bring about (however significant) or the harms that his incarceration would cause (however substantial). Rather, the statute requires the Court to evaluate "*the danger*" that "would be posed *by the person's release*.") (emphasis in original).

*United States v. Gallagher*, Criminal No. SAG-19-0479, 2020 WL 2614819, at *3 (D. Md. May 22, 2020) (alteration in original).

Thus, the Court now engages in a *de novo* review of the factors set forth in 18 U.S.C. § 3142(g), including the new information, to determine if there are conditions of release that

6

could be fashioned to assure the defendant's appearance as required and the safety of the community.

Initially, the Court recognizes again that a statutory rebuttable presumption of detention applies in this case. 18 U.S.C. § 3142 (e)(3)(A) & (B). Regarding the nature and circumstances of the offenses charged, the defendant is charged with offenses involving controlled substances and firearms. *See id.* § 3142(g)(1). Regarding the weight of the evidence against the defendant, the Court finds that the weight of the evidence against the defendant is strong. At the detention hearing on February 4, 2019, the government proffered the following facts. The investigation in this case arose out of a report of a missing person. During its investigation, law enforcement discovered a relationship between the missing person and the defendant. That investigation led to the execution of a search warrant at the defendant's residence on June 18, 2019. During the search of the defendant's residence, among the items the agents seized were four firearms, magazines, ammunition, 546 grams of methamphetamine, 245 grams of cocaine, 33 kilograms of marijuana, approximately $213,000 in cash ($4650 of which was counterfeit), electronic devices, a drug ledger, scales, supplies to package drugs, and a money counter. The defendant admitted that everything that was seized belonged to him.

At the time of the detention hearing, the defendant had not been charged with any offense related to the missing person. However, in December 2019, the grand jury returned a superseding indictment that charged the defendant with Murder in Furtherance of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances. In its Opposition, the government proffers significant, detailed facts supporting that charge as well as the original charges. *See* Opposition (ECF No. 63 at 2-12). In short, the missing person (the "victim") was a large-scale importer of marijuana that he stored in a storage facility. In 2017 the victim, the

7

defendant, and the defendant's son, the co-defendant, entered into a drug distribution enterprise. On April 6, 2018, the victim's cell phone activity ceased, and he was never seen again.[5] The government has strong circumstantial evidence linking the defendant to the victim's disappearance (and alleged murder) and the theft of the marijuana that was stored in the victim's storage facility. That circumstantial evidence consists of cell phone records, including location data, video surveillance, and forensic evidence linking one of the firearms found during the search of the defendant's residence to the murder. Specifically, the victim's blood was found on one of the firearms seized from the defendant's residence. Thus, the weight of the evidence against the defendant on the drug and murder charges is strong. *See* 18 U.S.C. § 3142(g)(2).

Regarding the history and characteristics of the defendant, the Court reviewed the Pretrial Services report and the Addendum thereto that summarized the defendant's residential history and family ties, his employment history and financial resources, his health, and his criminal history. Notably, the defendant advised Pretrial Services that he was born in Jamaica, New York, and that he was a dual citizen of the United States and Jamaica. He made the same representation to the Court at his initial appearance. However, at the detention hearing, the defendant admitted to the Court that he was born in Jamaica, not the United States, and that he was not a citizen of the United States but had the status of a legal permanent resident. The defendant advised Pretrial Services that he has only traveled outside of the United States one time, five years ago to visit family in Jamaica. The government, however, has evidence that the defendant has traveled outside the United States at least seven times. The defendant identified a brother, Kerry George. However, when contacted, Kerry George advised Pretrial Services that he is not related to the defendant, but a close friend for seven years. Mr. George could not verify

---

[5] The victim's body has not been discovered.

the defendant's personal, residential, passport, or travel information.  The defendant advised Pretrial Services that he was the owner of Super Auto Works located on Cook Road in Beltsville, Maryland.  The government, however, could not find any record of that business at that location.  Pretrial Services found two social security numbers associated with the defendant.  The defendant reported that he suffered from high blood pressure, but did not mention diabetes, chronic kidney disease, or hyperlipidemia.  The government reported that it has evidence of a communication between the defendant and a third party during which the defendant requested the third party to create false identification documents for him.  Regarding his criminal history, although the defendant has been arrested ten times between 1997 to 2017 for offenses including theft, assault, possession of controlled substances, and malicious destruction of property, he has never been convicted of any offense.  There are several failures to appear warrants on his record.  *See id.* § 3142(g)(3).

The Court acknowledges that the defendant suffers from one or more conditions that may subject him to severe illness if he contracts COVID-19.  However, this is not a case where the risk of flight or danger to the community is reduced because of advanced age, physical disability, or serious incapacitating illness.  Simply stated, the defendant's preexisting health conditions, and the possible risks posed to the defendant by incarceration, do not affect the § 3142(f) and (g) analysis.  As will be discussed below, however, the defendant's preexisting health conditions are relevant in assessing whether the defendant should be released temporarily under 18 U.S.C. § 3142(i).

Finally, regarding the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release, the Court finds that the defendant would pose a serious danger to the community if released, based on the seizure of the firearms,

the significant amount of drugs, the drug distribution packaging supplies and equipment, and over $200,000 in cash from the defendant's residence, in addition to the defendant's admission that it all belonged to him. That finding is further bolstered by the evidence connecting the defendant to the alleged murder of the victim. *See id.* § 3142(g)(4).

After reviewing *da novo* the § 3142(g) factors, including the new information regarding the defendant's health, the Court affirms its prior finding that the defendant has not introduced sufficient evidence to rebut the presumption of detention. Assuming *arguendo* that he has, however, based on the evidence and information discussed above, the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community, and by a preponderance of the evidence that no combination of conditions of release will reasonably assure the defendant's presence at future court proceedings.

Although each case must be decided on its own particular facts and after an individualized assessment of the § 3142(g) factors, the Court notes the following recent decisions of this Court denying requests for release from defendants suffering from health conditions similar to the defendant's, including hypertension and diabetes. *See, e.g.*, *United States v. Wheeler*, Criminal Case No. CCB-19-0455, 2020 WL 2085473 (D. Md. Apr. 30, 2020) (asthma, COVID-19, diabetes); *United States v. Lee*, No. ELH-19-159, 2020 WL 1974881 (D. Md. Apr. 24, 2020) (high blood pressure, obesity, depression); *United States v. Green*, Criminal Case No. CCB-19-0539-1, 2020 WL 1873967 (D. Md. Apr. 15, 2020) (asthma, high blood pressure, chronic obstructive pulmonary disease); *Bilbrough*, 2020 WL 1694362, at *4 (diabetes); *Martin*, 2020 WL 1274857, at *4 (diabetes, high blood pressure, asthma).

IV. TEMPORARY RELEASE UNDER § 3142(i)

The defendant's alternative argument for release invokes the provisions of 18 U.S.C. § 3142(i). Under 18 U.S.C. § 3142(i), the Court "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."[6]

Regarding whether the defendant has established "another compelling reason" for temporary release, the Fourth Circuit has directed the Court to

> consider in the first instance the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).

*United States v. Creek*, No. 20-4251, Order at 1 (4th Cir. Apr. 15, 2020).

In the context of COVID-19, four factors are to be considered in determining whether a compelling reason permitting temporary release under 18 U.S.C. § 3142(i) has been established: (1) the original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that a defendant's release would increase the COVID-19 risks to others. *Green*, 2020 WL 1873967, at *3 (citing *Clark*, 2020 WL 1446895, at *3). The defendant has the burden to show that circumstances warranting temporary release under § 3142(i) exist. *United States v. Sanders*, __ F. Supp. 3d __, No. 19-20037-01-DDC, 2020 WL 1528621, at *3 (D. Kan. Mar. 31, 2020). "The question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those

---

[6] The defendant does not argue that temporary release is necessary for the preparation of his defense.

11

traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion." *United States v. Hernandez*, No. PX-19-158-9, slip op. at 5-6 (D. Md. Apr. 29, 2020).

As discussed above, the original grounds for detention weigh heavily in favor of the government. The defendant is charged with offenses that carry a presumption of detention. Based on the nature of the charges and the weight of the evidence against him, he poses a serious risk of danger to the community if released. Further, the defendant poses a serious risk of flight based on the discrepant identification, citizenship, travel, and employment information provided to Pretrial Services and the Court, as well as evidence of at least attempting to obtain false identification documents.

Regarding the specificity of the defendant's COVID-19 concerns, the defendant's history of diabetes, hypertension, and, possibly, chronic kidney disease makes him especially vulnerable to contracting COVID-19 and heightens his risk of severe illness if infected with COVID-19. Although the medical records submitted by the defendant confirm these conditions, they do not reflect that he is not being properly treated for them.[7] The defendant claims that he has not always received his needed medications in a timely fashion. *See* Motion (ECF No. 62 at 9). He also complains of fluctuating hemoglobin levels and that he is exhibiting signs of a deteriorating diabetic condition, characterized by his being screened for potential retinopathy. *See* Reply

---

[7] In its Order for Supplemental Briefing (ECF No. 64), the Court directed the defendant to provide "copies of medical records supporting the diagnosis and relevant treatment history of the underlying condition(s) including, if applicable and available, any evaluation and treatment for that condition at the detention facility. Any medical records should be filed under seal, highlighting those portions most relevant." In response, the defendant attached eleven pages of medical records to the Reply. The defendant represents that the entirety of his medical records is voluminous and offers to provide the Court all of the records should the Court desire. The Court assumes that the eleven pages submitted with the Reply are the most relevant to the defendant's position, and, therefore, the Court does not find it necessary to review the remainder.

(ECF No. 66 at 4-5). The medical records do reflect hemoglobin levels in a range consistent with diabetes. The records reflect, however, that he has been prescribed medication to control his diabetes, including insulin. Reply, Ex. A (ECF No. 66-1 at 7). The medical records also reflect that he requires an annual dilated fundoscopic exam to evaluate for retinopathy, which was approved and to be scheduled. *Id.* at 9. Further, the medical records reflect that he has been placed on a diabetic diet. *Id.* at 10. In fact, the medical records reflect that the defendant has been noncompliant with treatment. The most recent medical record that reports a visit to the health care provider on February 18, 2020, is noteworthy. In that report, the reason for the visit is noted as "Noncompliance[:] Referred for noncompliance with noon FS glucometr [sic] check. Pt not on afternoon insulin injection. Review of glucometer reading shows good to fair control, will discontinue FS glucometer at noon." That record also lists the medications that the defendant is prescribed. *Id.* at 5. The Court is not persuaded that the defendant is not receiving an appropriate level of care for his preexisting conditions. In regard specifically to COVID-19, although the defendant may be at a higher risk of severe illness if he contracts COVID-19, he has not contracted the virus thus far, he has not been exposed to anyone who has contracted the virus, he has not exhibited symptoms consistent with COVID-19, and he does not aver with any specificity that his individual placement conditions heighten the possibility that he will be exposed to the virus. Rather, the defendant argues that CDF generally is not taking sufficient precautionary measure to protect detainees, including the defendant, from exposure to the virus.

On that issue, it appears that CDF has implemented a comprehensive set of precautionary measures to protect its staff and residents.

> CDF continues to direct detainees to adhere to social distance and hygienic guidelines, as articulated by medical experts and in local guidance. *See, e.g.*, ECF 27-11 (CDF bulletin requiring "[f]requent hand washing, [m]aintaining social distance of at least six feet, [and] [c]ontinuous wiping down of all areas within

>   housing units"). CDF has implemented procedures encompassing all who attempt to enter the facility, including mandatory temperature checks at the entrance of the building. ECF 27-13.

*Gallagher*, 2020 WL 2614819, at *7 (alterations in original).

Further, it appears that these measures have been effective. According the United States Marshals Service, as of May 27, 2020, CDF has had only two COVID-19-positive detainees. Both were diagnosed as positive for COVID-19 before arriving at CDF. One has fully recovered, and the other is presently asymptomatic and recovering in medical isolation. Both were placed in quarantine upon their arrival at CDF, limiting their exposure to other detainees. Further, only two staff members have reported COVID-19 symptoms, but only after extended time periods away from CDF, resulting in no exposure to detainees and other staff members. In addition to the protocols that appear to have controlled any significant outbreak so far, on May 20, 2020, the Governor of Maryland, Larry Hogan, announced universal COVID-19 testing at all state-run correctional and juvenile facilities, including CDF.[8] These precautionary measures will only contribute to CDF's ability to keep its detainees protected from exposure to COVID-19. Therefore, regarding the second *Clark* factor, the Court appreciates that the defendant suffers from one or more conditions that put him at a greater risk of severe illness if he contracts COVID-19, but finds that he has received appropriate treatment for those conditions and that the precautionary measures in place at CDF are adequate to protect the defendant and all detainees from exposure to the virus.

The final two *Clark* factors involve a consideration of the defendant's proposed release plan. Specifically, the Court must consider the extent to which that release plan is designed to

---

[8] Pamela Wood & Phillip Jackson, *Maryland to test all detainees, staff at prisons and juvenile facilities for coronavirus*, Baltimore Sun (May 20, 2020, 6:16 PM), http://www.baltimoresun.com/coronavirus/bs-md-prison-testing-20200520-wroxapcoljbrvmv7lcsh4vrn2e-story.html.

mitigate or exacerbate other COVID-19 risks to the defendant and the likelihood that the defendant's release would increase the COVID-19 risks to others. The defendant's release plan includes the following restrictions:

1. Home detention for twenty-four hours a day, seven days a week, with only medical visits permitted (to be monitored by smartphone or via any other method the Court selects);

2. No use of internet-capable devices, except as authorized and monitored by Pretrial Services;

3. Compliance with all state, local, and federal directives related to COVID-19;

4. No contact with anyone, in person, by phone, or via social media, besides those in his residence, immediate family residing elsewhere, and his counsel; and

5. Agreeing that Pretrial Services may visit and search the residence at any time, including searching any electronic devices that Mr. Williams can access.

Reply (ECF No. 66 at 6-7).

The defendant would reside with his father in his father's apartment in Silver Spring, Maryland. If necessary, the defendant could quarantine in the bedroom, with his father sleeping in the living room. His father works as the assistant food manager at a psychiatric institution in Washington, D.C. The defendant's father would be able to transport the defendant from the Baltimore courthouse to the apartment and would also be able to provide transportation to medical appointments. *See* Reply (ECF No 66 at 7).

The defendant's release plan requires home detention to be monitored by smartphone technology, or another type of nontraditional location monitoring technology. Indeed, traditional home detention with location monitoring requires a probation officer to install a transmitter to

the defendant's ankle. That practice, however, does not permit the probation officer to maintain an appropriate social distance, thereby potentially placing the probation officer and the defendant at a higher risk of transmitting the COVID-19 virus. As such, the United States Probation Office has suspended this traditional location monitoring and instead now employs other location monitoring techniques, including SmartLink, VoiceID, and Home Incarceration by Phone. These alternative technologies would not be adequate in this case. They would not monitor the defendant's location in real time. Rather, they would determine the defendant's location on a periodic basis throughout the day. With traditional home detention with location monitoring, the monitoring agency would receive an alert the moment a defendant leaves the residence or tampers with the transmitter. The alternative technologies now in use do not offer that high level of protection. The defendant could come and go without the knowledge of his probation officer, depending on the timing and frequency of the location checks. Further, the SmartLink technology, which involves the use of a smartphone, would require the defendant to have an internet-accessible device, which would be prohibited under the defendant's release plan.

United States Magistrate Judge J. Mark Coulson recently commented on the third and fourth *Clark* factors: "The remaining two factors depend in large part on how compliant Defendant would be with the directives of public officials and health experts should he be released." *Green*, 2020 WL 1873967, at *3. Given the Court's inability to monitor effectively the defendant's location, his voluntary compliance with directives of public officials and health experts is critical in protecting the defendant and others from the risk of contracting COVID-19. However, the discrepant identification, citizenship, travel, and employment information that the defendant provided to Pretrial Services and the Court, as well as evidence of at least attempting

to obtain false identification documents, diminish any confidence the Court would have that he would so comply.

For these reasons, when balanced against the § 3142(g) factors, the Court does not find that the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at CDF, rises to the level of a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).

## ORDER

Accordingly, it is this 28th day of May 2020, hereby **ORDERED** that the defendant's Motion to Reopen Detention Hearing and Set Conditions of Release or to Issue Order for Temporary Release (ECF No. 62) is **DENIED**.

Date: May 28, 2020

/s/
Thomas M. DiGirolamo
United States Magistrate Judge